**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Paul Gary RATNER, a/k/a Richard M. Parlato, a/k/a Michael Lemoine,**
**Defendant-Appellant.**

**No. 71–3510.**

United States Court of Appeals,
Fifth Circuit.

July 18, 1972.

---

Rudolph F. Becker, III, New Orleans, La., for defendant-appellant.

Gerald J. Gallinghouse, U. S. Atty., Stephen L. Dunne, Mary Williams Cazalas, Asst. U. S. Attys., New Orleans, La., for plaintiff-appellee.

Before BELL, GOLDBERG, and RONEY, Circuit Judges.

BELL, Circuit Judge:

Appellant was convicted for violating 18 U.S.C.A. § 485,[1] in that he possessed eleven counterfeit gold coins with intent to defraud. The coins, in the statutory language, were in "resemblance and similitude" of gold coins in the denomination of $1.00 coined in the mints of the United States in 1853. We reverse on a procedural error and reach those questions which are likely to arise on retrial.

The first assignment of error rests on the claim that the district court erred in denying a motion to suppress the gold coins as evidence. The contention is that they were seized incident to an unlawful arrest and without a search warrant. There was no error in this regard. The arrest was legal. Thereafter appellant requested that the police officers safeguard his property. He had three bags in his truck which was parked at police headquarters and it was impossible to lock the truck. The officers agreed and took an inventory of the contents of the bags. The coins were

---

1. 18 U.S.C.A. § 485, in pertinent part: "Whoever . . . possesses . . . counterfeit coin . . . knowing the same to be . . . counterfeit, with intent to defraud any body politic or corporate, or any person, . . . Shall be fined not more than $5,000 or imprisoned not more than fifteen years, or both."

discovered as a result of taking the inventory.

█ █ Whether there is consent to a search is a question of fact for determination by the district court. United States v. Fike, 5 Cir., 1971, 449 F.2d 191; Perkins v. Henderson, 5 Cir., 1969, 418 F.2d 441; Landsdown v. United States, 5 Cir., 1965, 348 F.2d 405. The record supports the denial of the motion to suppress on the ground that appellant consented to the search through consent to the inventory.

█ There was no violation of Rule 16(g), F.R.Crim.P. with respect to the blow-ups of handwriting exemplars. The blow-ups were made known by the prosecutor to defense counsel with due dispatch.

█ There was no error in the ruling of the court on the motion for a bill of particulars. The indictment charged possession with intent to defraud. The statute, footnote (1), supra, provides "with intent to defraud any body politic or corporate, or any person . . .". The prosecution answered the motion in writing by stating that appellant intended to defraud "some person". Thus the indictment was limited to intent to defraud "any person" as distinguished from "any body politic or corporate". Appellant contends that the statute required that he be charged with an intent to defraud some specific person and that he was entitled to have the name of that person. We reject this contention. The statute makes possession with the general intent to defraud any person a crime. The intent to defraud was an element of the offense which was subject to proof and we will next discuss this element.

█ The element of possession of counterfeit coins was undisputed. The burden on the government was to establish intent on the part of appellant to defraud some person. This was done by showing past conduct. The government offered testimony of a woman who may or may not have purchased counterfeit coins of the same type from appellant some three years earlier. She could not positively identify appellant. She did purchase the coins from a person who was using the alias "Richard M. Parlato", one of the aliases employed by appellant. They were purchased in New Orleans which is near Slidell, Louisiana where appellant was arrested. She paid for the coins with a check and the prosecution produced a handwriting expert who testified that the endorsement on the check was in the handwriting of appellant. It is thus apparent that the proof of intent to defraud was a disputed question; hence the importance of the next matter to be discussed.

During the course of the trial the prosecution, for some reason not readily apparent, called one of the arresting officers to testify as to the circumstances preceding appellant's arrest. There was no objection to this procedure which included testimony as to the arrest and the inventory. It had been developed on the motion to suppress, outside the presence of the jury, that appellant was actually arrested as a parole violator from New York. While this officer was being examined by the prosecution on the trial and in the presence of the jury, he stated, purely gratuitously, that he was advised that appellant was a parole violator. The court admonished the jury to ignore the statement that appellant was a parole violator, and that he was not to suffer any prejudice from what he might have done in the past. The police officer then stated that he booked appellant as a parole violator. Following cross-examination, the prosecution then asked the witness additional questions with reference to the coins. The following sequence of questions and answers demonstrates the determination of the witness if not the prosecution to make it known to the jury that appellant was a parole or probation violator from New York:

"Mr. Dunne: [Counsel for the Government]

\*   \*   \*   \*   \*   \*

Q   Let me show you what the Government has marked for identification as G-1 through G-11, eleven

gold coins, and see if you can identify those (Counsel exhibits the document).

A  Yes, sir, these are the coins, 1953. (sic)

Q  Were they mounted like this when you got them?

A  Yes, sir.

Q  These were the coins that were in the truck: is that correct?

A  They were in a bag, an overnight bag. It was two bags, I believe, and they were in one of the bags.

Q  What did you do with these coins after you inventoried them?

A  After I inventoried, I took a rough inventory of the hand guns, I did list the guns by serial number for possible identification and the coins, I just put assorted coins and I contacted the F.B.I. to find out if he was wanted in any way and we did have in our file a notice or a flyer from the F.B.I. stating that he was wanted in New York, Brooklyn, New York, I think it was, as a probation violation. (sic)

MR. COTLAR:

Again, I am going to object to this testimony. It's prejudicial, your Honor.

THE COURT:

Well, he's not a probation violator or we are not trying him for being a probation violator. So, ignore that." [2]

■  The general rule in this circuit is that an erroneous admission of evidence is cured by excluding the evidence from consideration of the jury and directing the jurors to disregard it. Conner v. United States, 5 Cir., 1963, 322 F.2d 647. There the court held that a statement which placed the character and reputation of the defendant in evidence without the accused first having

done so did not affect the substantial rights of the defendant, reciting that his guilt was clear and that the error, if any, was harmless.

■  We discussed the same type of problem at some length in Odom v. United States, 5 Cir., 1967, 377 F.2d 853. There the evidence of guilt was borderline. A police officer was asked how long he had known Odom. He responded, "I had seen Mr. Odom come in and out of jail and spoke with him for approximately a year and a half." The court immediately ordered the testimony stricken and instructed the jury not to consider the statement in arriving at their verdict. We reversed on the ground that the testimony was irrelevant and highly prejudicial. There was no motion for mistrial but we held that admission of the evidence was plain error requiring a mistrial in the context of the case where a close question on proof was presented.

Each case of this kind must turn on its own peculiar facts and circumstances as to whether a defendant has been afforded a fair trial. In Russell v. United States, 5 Cir., 1970, 429 F.2d 237, a government witness referred to the fact that defendant was in the Fulton County jail and the jury was admonished to disregard the remarks and a mistrial was denied. The remarks were gratuitous as here. Evidence of guilt was overwhelming and we held that the admonishment to the jury by the trial judge was sufficient to expunge any possible prejudice. In Leonard v. United States, 5 Cir., 1967, 386 F.2d 423, we took a like course. The witness there was not a police officer and was disinterested. The evidence of guilt was clear.

We think that the proof on intent to defraud offered by the government in this case is sufficient if believed to warrant the verdict of guilty. On the other

2. There was no objection to the mention of the guns that were in the possession of appellant.

It seems clear from the record made on the motion to suppress that appellant was a parole violator and not a probation violator and the use of "probation" by the witness was probably inadvertent since he had previously termed appellant as a parole violator.

hand, the one witness offered as to intent was in considerable doubt as to appellant being the person from whom she purchased the coins. We have no way of knowing just what an influence the fact of appellant being a New York parole violator may have had on the jury. It was called to the jury's attention twice after the cautionary instruction. It was a fact which was utterly irrelevant to the trial. We are satisfied that it may have had substantial influence on the jury or at least we are left in grave doubt as to the proposition. Kotteakos v. United States, 1946, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557. Being of this view, a new trial is mandated.

Reversed and remanded for further proceedings not inconsistent herewith.