**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Jerry Clayton KIMBRELL, Defendant-**
**Appellant.**

**No. 72-1757**
**Summary Calendar.**[*]

United States Court of Appeals,
Fifth Circuit.

Dec. 13, 1972.

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir. 1970, 431 F.2d 409, Part I.

Horace A. Knowlton, III, Tampa, Fla. (Court-appointed), for defendant-appellant.

John L. Briggs, U. S. Atty., Claude H. Tison, Jr., Asst. U. S. Atty., Tampa, Fla., for plaintiff-appellee.

Before GEWIN, AINSWORTH and SIMPSON, Circuit Judges.

PER CURIAM:

Jerry Clayton Kimbrell appeals from his conviction and sentence below following a trial by jury upon ten counts charging violations of Title 18, U. S. Code, Section 2314. We affirm.

Each count was based upon the deposit in one of several Florida banks of a falsely made and forged check signed "W. O. Hayes" drawn on a closed account in an Abilene, Texas bank.[1] Each of the several Florida accounts was opened in Kimbrell's name with a small deposit of cash or a collectible check. Thereafter the falsely made checks on the Abilene bank were deposited and drawn against during collection.

As noted the jury convicted Kimbrell under each of the ten counts of the indictment. As to Counts One through Five the trial court imposed a general sentence to four years confinement. As to Counts Six through Ten imposition of sentence was suspended and the appellant was placed on probation for five years to follow the confinement sentence. The confinement sentence was directed to be served concurrently with a two-year State of Florida sentence then being served by Kimbrell, which state sentence was also based on false check charges arising at a point in time close

1. Viewed collectively and chronologically the several check transactions indicate that perhaps some form of "kiting" scheme was being attempted, but this was neither charged nor proved below. Such proof was of course not necessary.

to the transactions on which the federal indictment was based. At sentencing the trial judge noted also that Kimbrell was then on three years probation from federal false check and forgery charges under a Northern District of Texas conviction, and also that an additional Middle District of Florida indictment was scheduled to be dismissed by the United States Attorney in view of the conviction now under appeal.

■ As the first point on appeal Kimbrell urges that his Sixth Amendment and Article III right to jury trial, his Fifth Amendment right not to be a witness against himself, and his fundamental right to appeal were all violated by the prejudicial action of the trial judge at the time of sentencing. While it is true that the trial judge unnecessarily criticized Kimbrell for insisting upon going to trial, for causing the government expense in procuring witnesses for the trial, for failing to testify in his own behalf at trial, and volunteered the view that any appeal would be frivolous, we think that the above recitation of the events at Kimbrell's sentencing demonstrates that his contentions in this regard are without merit. Consecutive sentences totaling 100 years could have been imposed by the trial judge for the ten convictions under Title 18, U. S. Code, Section 2314. Instead a total of only four years confinement was imposed and that sentence was made concurrent with a state sentence. Additional federal charges were dropped. The tongue-lashing at the hands of the trial judge added nothing to the sentence imposed and did nothing to prevent the appellant from going to trial, from exercising his Fifth Amendment right not to testify, from exercising his Sixth Amendment right to be confronted by the witnesses against him, and from appealing the adverse result of the trial. The diatribe may have been full of sound and fury but it signified nothing.

■■ The next contention advanced by Kimbrell is that he was prejudiced by the admission of evidence, later stricken, showing that he was present in Abilene, Texas, at the time when the blank checks used were lost by or stolen from W. O. Hayes. The purpose of this testimony was to show that Kimbrell resided at Abilene at the time in question and was in a position to have possible access to the lost or stolen checks. We view the evidence as being admissible, in consonance with a pretrial ruling below. For this reason we hold that no prejudice could arise to the defendant when the trial judge reversed this ruling and directed the jury to disregard the evidence.[2] During the trial the appellant did not request a mistrial or other relief, although he did assert in his post-trial motion for new trial that the admission of the evidence was prejudicial. The thrust of the evidence was that Kimbrell had the same opportunity to obtain the checks that is open to a person who cashes a stolen check in the community where it was stolen. It was independently corroborative of the other evidence in the case. The trial judge's turnabout in striking the evidence was more than Kimbrell was entitled to, but assuming arguendo that the evidence was inadmissible the vigorous instruction (Footnote 2, supra) that it had "nothing to do with this case" was a sufficient curative. Further, as noted, the limited instruction was the sole relief sought by Kimbrell until after the trial was over. He got what he asked for and may not now be heard to complain.

2. The instruction to disregard the evidence was in the following language:
   "Ladies and gentlemen, there were two pieces of evidence that came in that the defendant was in Abilene, Texas at a certain time. That has nothing to do with this case. Whether he was in Abilene, Texas or New York City or any other place, has nothing to do with it. The question is: Did he knowingly present those checks which would be used in interstate commerce? The fact that he may have been in a certain community at a certain time has no relationship to any issue in this case. You are to disregard it."

■ Next, the appellant urges that the district court erred in denying his motions for directed verdict and for new trial because there was not sufficient evidence of appellant's knowledge that the checks were forged at the time he deposited them and thus caused them to be transported in interstate commerce. The jury had before it evidence which, if believed, was ample to support the necessary inference of the defendant's guilty knowledge of the nature of the checks. Viewed in the light most favorable to the government, Glasser v. United States, 1944, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680, the evidence was sufficient to withstand a motion for directed verdict and to justify the denial of Kimbrell's motion for new trial.

■ The final contention on appeal is that the trial judge's conduct at the trial was so prejudicial to the appellant as to deny him his Fifth Amendment right to trial by a fair and impartial jury. This point is supported by several references to the trial transcript. We have carefully read the entire transcript, including the portions specifically cited. The comments of the trial judge and his occasional castigation of counsel were in some instances more caustic and short-tempered than was warranted, but the admonitions were issued impartially to government and defense counsel alike. If anything the trial judge was more severe in his comments to the government attorney. We do not view any of the instances cited or anything else occurring at the trial as prejudicial to the rights of the defendant, whatever may be said of the trial judge's demeanor. The trial judge was at pains to express no opinion and to indicate none, and made it clear to the jury that from his point of view he was seeking simply to aid the jury's understanding of the facts as well as his own. Apt for quotation here is the eloquent but gentle reproof administered to the trial judge by Judge Learned Hand in United States v. Liss, 2 Cir. 1943, 137 F.2d 995, 999:

"It may perhaps have been true that at times his manner was not as urbane as could have been wished, and counsel may have occasionally smarted under his admonitions; but we can find no evidence . . . whatever that he expressed even indirectly any opinion as to the guilt of the accused."

The point is without substance.

The appellant has failed to demonstrate reversible error in the proceedings below. The judgment appealed from is

Affirmed.