**UNITED STATES of America, Appellee,**

v.

**Charles Frederick GERHART, Appellant.**

No. 76–1254.

United States Court of Appeals, Eighth Circuit.

Submitted June 18, 1976.

Decided Aug. 2, 1976.

Rex Darrah and Robert M. Benton, Des Moines, Iowa, for appellant.

Allen L. Donielson, U. S. Atty., John M. Fitzgibbons and Paul A. Zoss, Asst. U. S. Attys., Des Moines, Iowa, for appellee.

Before GIBSON, Chief Judge, and LAY and WEBSTER, Circuit Judges.

GIBSON, Chief Judge.

Defendant, Charles Frederick Gerhart, appeals from his jury conviction of violating 18 U.S.C. § 1014 (1970) for knowingly making a material false statement on a loan application to influence a member bank of the Federal Reserve System to approve and make him a loan. He was sentenced to one year in prison. The sole contention raised by the defendant on this appeal is that the District Court[1] erred in admitting into evidence a photocopy of a document over the defendant's best-evidence objection. The document consisted of a photocopy of a bank check. The proffered exhibit was thus a photocopy of a photocopy.

On January 15, 1973, the defendant applied to the First National Bank of Colfax, Iowa, for a loan in the amount of $56,011.10 and fraudulently listed as a personal asset an account receivable from the Washington Heights Maplenoll Apartments in the amount of $50,000. Previously, in July, 1972, he had terminated a subcontracting agreement on Maplenoll's apartment construction project and accepted a final settlement of $45,079.86 from Maplenoll Construction Company. In payment, defendant had received two checks from Maplenoll: No. 105 in the amount of $40,247.46 payable jointly to the defendant and the Internal Revenue Service (IRS) and No. 106 in the amount of $4,822.40 payable to the defendant alone. In connection with the subsequent loan application, defendant presented the bank with photocopies of the two checks, but the amount on the photocopy of check No. 106 was illegible. The figures were altered or smudged so as to read "$54,822.40" rather than "$4,822.40." In addition, defendant had written across the copy of check No. 105, "the other check is for $54,822.40 Check No. 106", and he told the bank that check No. 106 had mistakenly been sent to the IRS. He also represented falsely that the July, 1972, settlement with Maplenoll had been for $95,079.86 rather than $45,079.86, and presented to the bank a copy of the settlement agreement that had been altered to show $95,079.86 rather than the correct figure of $45,079.86, again demonstrating an unmistakable intent to deceive and mislead.

An officer of the bank, Charles M. Stinson, thereafter contacted the IRS and inquired as to the whereabouts of check No. 106. The IRS answered that no such check had been received. Thereafter, on request of Special Agent Robert Smith of the Iowa Department of Public Safety, Mr. Stinson surrendered the photocopies of both checks, but first, as a precaution, made a second photocopy of each of them. Subsequently, the Iowa agency misplaced the original photocopies. Thus, at trial the Government introduced the second photocopy of check No. 106 that was made by the bank. Bank

---

1. The Honorable William C. Stuart, United States District Judge for the Southern District of Iowa.

officer Stinson and Special Agent Smith testified that they had viewed both the first and second photocopies and that, with the exception of some handwriting not seen by the jury, the exhibited copy accurately reproduced the original photocopy of the check.

Under the new Federal Rules of Evidence, though proof of the contents of a writing requires production of the original document, secondary evidence is admissible if the original has been lost. Fed.R.Ev. 1004(1). The defendant does not dispute this principle and does not challenge the adequacy of the Government's showing that the original photocopy had been lost. Rather, he contends that a further prerequisite to the admission of secondary evidence is a clear and convincing showing of its trustworthiness and that no such showing was made.

 The defendant's contentions are entirely without merit. A clear showing of trustworthiness need not be made to admit secondary evidence of the contents of a writing. Rule 1004 of the Federal Rules of Evidence states in relevant part as follows:

*Admissibility of Other Evidence of Contents*

The original is not required, and other evidence of the contents of a writing, recording, or photograph is admissible if—

(1) *Originals lost or destroyed.* All originals are lost or have been destroyed,

unless the proponent lost or destroyed them in bad faith [.]

This rule, essentially a restatement of the common law, excuses production of the original of a writing if one of the enumerated conditions is satisfied. The rule recognizes no degrees of secondary evidence and in this respect "is probably a departure from the rule found in the majority of American jurisdictions." 5 J. Weinstein, *Evidence* ¶ 1004[01], at 1004–5 (1975). Thus, once an enumerated condition of Rule 1004 is met, the proponent may prove the contents of a writing by any secondary evidence, subject to an attack by the opposing party not as to admissibility but to the weight to be given the evidence, with final determination left to the trier of fact.[2] On the other hand, the new rules allocate to the court preliminary questions such as authenticity, lack of an original and whether the proponent has presented a sufficient foundation so that a "reasonable juror could be convinced" that the secondary evidence correctly reflects the contents of the original. 5 J. Weinstein, *Evidence* ¶ 1004(1)[03], at 1004–11 (1975); see Fed.R.Ev. 104(a), 901(a), 1008. Contrary to defendant's assertions, no "clear and convincing evidence of authenticity and accuracy" is required for admission.[3]

In the instant case, the Government was merely required to demonstrate preliminarily, to the satisfaction of the court, that the original photocopy was lost, that the proffered photocopy was what it purported to

---

**2.** [O]nce the conditions of Rule 1004 are met, the party seeking to prove the contents of a writing * * * may do so by any kind of secondary evidence ranging from photographs and handwritten copies to oral testimony of a witness whose credibility is suspect. Of course, the opponent may attack the sufficiency of the secondary evidence including the credibility of the witness. This attack, however, goes not to admissibility but to the weight of the evidence and is a matter for the trier of fact to resolve.

5 J. Weinstein, *Evidence* ¶ 1004[01], at 1004–4 —1004–5 (1975).

**3.** The defendant's reliance upon *United States v. Knohl*, 379 F.2d 427, 440 (2d Cir.), *cert. denied*, 389 U.S. 973, 88 S.Ct. 472, 19 L.Ed.2d 465 (1967), and *United States v. Alexander*, 326

F.2d 736, 738–40 (4th Cir. 1964), is misplaced. In *Knohl*, a decision pre-dating the Federal Rules of Evidence, the Second Circuit adopted a "clear and convincing" standard for authentication of copies of tape recordings because of their susceptibility to alteration and often persuasive, sometimes dramatic, impact on a jury. As for the defendant's best-evidence objection to admission of re-recordings of subsequently lost tapes, the court affirmed the trial court's admission of the re-recordings as secondary evidence. In *Alexander*, the copy of the check admitted as evidence lacked significant information, including the name and address of the payee, as a result of a mechanical malfunction of the photoreproduction equipment, a factor not present here.

be and that it accurately reflected the contents of the original photocopy. This the Government achieved through the testimony of Mr. Stinson and Special Agent Smith. The District Court's implicit preliminary findings are supported by the record and admission of the exhibit in evidence was by no means an abuse of the District Court's discretion.[4] *Western, Inc. v. United States*, 234 F.2d 211 (8th Cir. 1956).

4. An alternative theory for admitting the photocopy is available, though apparently it was not advanced by the Government at trial. Under the definition of a "duplicate" contained in Fed.R.Ev. 1001(4), the proffered photocopy could also have been admitted by operation of Fed.R.Ev. 1003, "to the same extent as an original," since the defendant raised no genuine issue as to the authenticity of the original (here, the originals were the first photocopies of the checks made and submitted to the bank by the defendant himself) and, under the circumstances, no unfairness would result from admission of the duplicate in lieu of the original.

Fed.R.Ev. 1001(4) defines a duplicate as "a counterpart produced by * * * means of photography * * * or by chemical repro-

The judgment of the District Court is affirmed.

duction, or by other equivalent techniques which accurately reproduces the original." Fed.R.Ev. 1003 provides for admission of duplicates as follows:

A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original.

No serious contention can be made that the instant photocopy is not a "duplicate" within the meaning of Rule 1001(4) and thus not admissible under Rule 1003. *United States v. Rodriguez*, 524 F.2d 485 (5th Cir. 1975); *see* 5 J. Weinstein, *Evidence* ¶ 1001(4)[02], at 1001–68, and ¶ 1001(4)[05], at 1001–84, 1001–91 (1975).