UNITED STATES of America, Appellee,

v.

**Richard MASON, Appellant.**

UNITED STATES of America, Appellee,

·v.

**Ethelbert B. BURGESS, Appellant.**

Nos. 78–5180, 79–5038.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 3, 1979.

Decided Dec. 11, 1979.

*ITO Corp.,* 6 BRBS 519, BRB No. 76–450 (August 22, 1977).

**50**

Brian K. Miller, Richmond, Va., for appellant Burgess.

Samuel R. DeLuca, Jersey City, N. J., on brief, for appellant Mason.

Raymond A. Carpenter, Asst. U. S. Atty., and Brenda Crocker, Third Year Law Student, Richmond, Va. (William B. Cummings, U. S. Atty., Raymond A. Jackson, Asst. U. S. Atty., G. Wingate Grant, II, Student Asst. to the U. S. Atty., Norfolk, on brief), for appellee.

Before HAYNSWORTH, Chief Judge, FIELD, Senior Circuit Judge, and WIDENER, Circuit Judge.

FIELD, Senior Circuit Judge:

The only substantial question in these consolidated appeals is whether the defendants were improperly indicted and convicted on multiple counts under the Gun Control Act for the simultaneous procurement and receipt of more than one firearm.

### No. 78–5180

On July 15, 1976, the defendant, Richard Mason, purchased a revolver from a licensed gun shop in Hampton, Virginia, and in the course of completing Form 4473, a firearms transaction record, Mason responded to a written question by stating that he had not been convicted of a crime in any court punishable by imprisonment for a term exceeding one year. Mason had, in fact, been convicted in 1973 in the State of New Jersey on a charge of illegally possessing a firearm in an automobile, an offense which carried a maximum penalty of seven years imprisonment. On December 9, 1976, Mason purchased three additional revolvers from the same gun shop and again responded in the negative to the question relating to prior convictions on each of three No. 4473 forms.

A six count indictment was returned against Mason in the Eastern District of Virginia. Based upon the July 15th purchase, Mason was charged in Count I with knowingly making a false statement in connection with the acquisition of a firearm in violation of 18 U.S.C. § 922(a)(6).[1] Counts II, III, and IV charged Mason with violations of Section 922(a)(6) based upon each of the three No. 4473 forms executed by him with respect to the three purchases on December 9th. Count V charged Mason with possession and receipt of a firearm in violation of 18 U.S.C. § 922(h)[2] based upon the July 15th purchase, and Count VI

---

1. 18 U.S.C. § 922(a)(6) provides in pertinent part as follows:

    (a) It shall be unlawful—

      (6) for any person in connection with the acquisition or attempted acquisition of any firearm * * * knowingly to make any false or fictitious oral or written statements * * * intended or likely to deceive * * *

[a] dealer * * * with respect to any fact material to the lawfulness of the sale or other disposition of such firearm * * * under the provisions of this chapter.

2. 18 U.S.C. § 922(h)(1) provides in pertinent part as follows:

    (h) It shall be unlawful for any person—

charged him with a violation of Section 922(h) based upon his purchase of the three firearms on December 9th.

Mason was tried to a jury and convicted on all six counts. The district judge imposed a sentence of two years for the violation of Section 922(a)(6) on the first count and three one-year sentences running consecutively to Count I and to each other on Counts II, III and IV. The sentences for violation of Section 922(h) on Counts V and VI were suspended and, accordingly, the total sentence received by Mason amounted to five years.

### No. 79–5038

On April 1, 1977, the defendant, Ethelbert B. Burgess, purchased two firearms from a licensed dealer and completed two firearms transaction record Forms No. 4473. On April 6, 1977, Burgess purchased a firearm from a different vendor, and again completed Form No. 4473. On each of the No. 4473 forms, incident to these purchases, Burgess answered in the negative concerning prior convictions punishable by a term exceeding one year when, in fact, he had such a prior conviction on his record.

On January 16, 1978, a grand jury for the Eastern District of Virginia returned a six count indictment against Burgess. Based upon one of the purchases on April 1, 1977, Count I charged Burgess with a violation of Section 922(a)(6) and Count II charged him with unlawful receipt of the weapon under Section 922(h)(1). Count III, also based on the April 1, 1977, transaction, charged Burgess with a violation of Section 922(a)(6), and Count IV charged him with unlawful receipt of a weapon under 18 U.S.C. § 922(h)(1). Counts V and VI were based upon the transaction of April 6, 1977, and charged Burgess with violations of Sections 922(a)(6) and 922(h)(1), respectively. Bur-

gess was tried to a jury and convicted on all six counts. The court sentenced him to a year and a day on Count I of the indictment on the condition that he be confined in a jail type institution for a period of six months and be placed on probation for a period of five years. The imposition of sentence on the remaining counts was suspended and Burgess was placed on probation for a period of. five years on each count, the probation periods to run concurrently.

### I

█ In addressing the issue presented by these appeals, we note, of course, that the allowable unit of prosecution for a federal offense lies within the discretion of Congress, subject only to constitutional limitations. However, when Congress fails to define the criminal unit or the legislative intent in this regard is ambiguous, such a determination must, of necessity, be made by the courts; and in making such a determination, any ambiguity should be resolved in favor of lenity. This principle was expressed in the landmark case of *Bell v. United States*, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955). In *Bell* the question was whether the simultaneous interstate transportation of two women in violation of the Mann Act constituted two offenses or only one. The Court, discerning an ambiguity in the statutory language,[3] held "that if Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses." *Id.,* at 84, 75 S.Ct. at 622.

The *Bell* rule of construction was applied by the Eighth Circuit in *United States v. Kinsley,* 518 F.2d 665 (1975), in holding that the simultaneous possession of several firearms constituted only one offense under 18

---

(1) * * * who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year; to receive any firearm * * * which has been shipped or transported in interstate or foreign commerce.

**3.** The relevant language of the Act confronting the court is:

Whoever knowingly transports in interstate or foreign commerce * * * any woman or girl for the purpose of prostitution or debauchery, or for any other immoral purpose * * *.

Shall be fined not more than $5,000 or imprisoned not more than five years, or both. 18 U.S.C. § 2421.

U.S.C. App. § 1202(a) which proscribes the possession of "any firearm." Three years later in *United States v. Powers,* 572 F.2d 146 (8 Cir. 1978), the same court elected to follow *Kinsley* in a case involving the unlawful receipt of firearms under 18 U.S.C. § 922(h)(1). In holding that the simultaneous receipt of three guns constituted only one offense under the statute, the court noted that the *Bell* rule of lenity has been applied in cases arising under the Gun Control Act, 18 U.S.C. §§ 921, *et seq.,* as well as Title VII of the Omnibus Crime Control Act, 18 U.S.C. App. §§ 1201–1203. *See United States v. Calhoun,* 510 F.2d 861 (7 Cir. 1975), *cert. denied,* 421 U.S. 950, 95 S.Ct. 1683, 44 L.Ed.2d 104; *McFarland v. Pickett,* 469 F.2d 1277 (7 Cir. 1972), and *United States v. Carty,* 447 F.2d 964 (5 Cir. 1971).

■ Since the definitive unit of prosecution cannot be determined from the language of the statute, and since the legislative history is uninstructive on this point,[4] under the rule of lenity Burgess is entitled to have his simultaneous receipt of multiple weapons treated as only one offense.

## II

■ The question remains whether a similar result is required with respect to those counts of the indictments charging the defendants with making false written statements in violation of 18 U.S.C. § 922(a)(6). In the cases we have cited dealing with receipt and possession of firearms, the courts were not called upon to make this determination. Despite the fact that the Ninth Circuit reached the opposite conclusion in *United States v. Long,* 524 F.2d 660 (1975), we think that the *Bell* rule should also apply to violations charged under Section 922(a)(6). The statutory language "any person" and "any false or fictitious oral or written statement" is comparable to that employed in Section 922(h)(1) and, in our opinion, is equally ambiguous with respect to the "unit of prosecution."

Our conclusion on this point is buttressed by the manner in which the Gun Control Act has been administered by the Bureau of Alcohol, Tobacco and Firearms. The Bureau has promulgated extensive regulations relative to the recordation of information on the sale or transfer of firearms and ammunition. Bearing upon the cases at hand is 27 C.F.R. § 178.124(a) (1978) which provides that a licensed dealer shall not sell any firearm to any person, other than another licensee, "unless he records the transaction on a firearms transaction record, Form 4473." Nowhere in this section, or in the related sections, is the term "transaction" defined, and we are unable to find language in the regulations specifically indicating that the sale of each firearm is a separate transaction or requires a separate Form 4473. Indeed, the relevant regulations seem to be as open to interpretation on this issue as does the statute itself.

However, Form 4473, itself, appears to reflect the Bureau's interpretation. On the reverse side of the form is the following language:

> If more than one firearm is involved, the identification required by section B, Items 11 through 15, must be provided for each firearm. The identification of the firearms transferred in a transaction which covers more than one weapon may be on a separate sheet of paper, which must be attached to the form covering the transaction.

The section B identification refers to the description of the firearm being transferred and thus the statement would appear to permit the use of one Form 4473 in a case where more than one weapon is being purchased in a single transaction. The only additional requirement in such a multiple purchase is that each firearm be separately and completely identified. The language employed by the Bureau in Form 4473 indicates to us that the use of multiple forms is left entirely to the discretion of the individual gun dealer. In short, the Bureau has

---

4. *See* H.R.Rep.No.1577, 90th Cong., 2d Sess., *reprinted in* [1968] U.S.Code Cong. & Admin. News, pp. 4410, 4411.

not interpreted Section 922(a)(6) to require a separate Form 4473 for each firearm in a multiple weapon transaction, and the "multiple falsifications" stem only from the business practice of a particular dealer.[5] The fortuity of a particular gun dealer's practice should not control the application of a federal criminal statute, and certainly there is nothing in Section 922(a)(6) or its legislative history which suggests that Congress intended such a result. Accordingly, we hold that Mason and Burgess are also entitled to have their simultaneous executions of multiple forms treated as only one offense.

In view of the foregoing, in Case No. 78–5180 we vacate Mason's sentences on Counts III and IV and remand to the district court with directions that his convictions on those counts be dismissed. In Case No. 79–5038 we remand to the district court with directions that it dismiss the convictions of Burgess on Counts III and IV.

5. The regulations allow firearms dealers to keep records by one of three methods: by (1) name of the purchaser; (2) date of disposition; or (3) transaction serial number. 27 C.F.R. 178.112(b) (1978). A dealer who uses the latter method may elect to use separate forms for the convenience of his filing system, while dealers using the first two methods may have no need for separate forms.